UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IAN WRIGHT,<br>  *Plaintiff*, | )     3:21-CV-104 (SVN)<br>)<br>) |
| v. | )<br>) |
| CORRECTION OFFICER SNYDER,<br>  *Defendant*. | )<br>)     February 27, 2024 |

## ORDER ON MOTION *IN LIMINE*

Sarala V. Nagala, United States District Judge.

In this civil rights action, incarcerated Plaintiff Ian Wright alleges that Defendant Correction Officer Stephen Snyder violated his First Amendment rights by searching his cell and destroying his property—allegedly in an effort to retaliate against and deter Plaintiff from continuing to complain about Department of Correction ("DOC") staff failing to abide by DOC's COVID-19 protocols. The Court denied Defendant's summary judgment motion, and jury selection is scheduled to begin February 27, 2024.

Presently pending before the Court is a motion *in limine* filed by Plaintiff seeking to preclude any evidence and questioning regarding all grievances and lawsuits he has filed except for: (1) grievances filed by Plaintiff between April 2020 and September 2020 related to COVID-19 health and safety concerns ("the COVID Grievances"); (2) grievances filed on or after September 25, 2020, related to the search of Plaintiff's cell at issue in this matter (the "Search Grievances"); and (3) a lawsuit filed by Plaintiff, *Wright v. Cooke*, No. 3:20-cv-1284 (SVN) (D. Conn.) ("*Cooke*"). ECF No. 135 at 1. Defendant responds that he seeks to cross-examine Plaintiff related to eight grievances Plaintiff filed in 2021 and four lawsuits (in addition to the one Plaintiff has identified) that Plaintiff filed between 2018 and 2023. ECF No. 156 (listing lawsuits and grievances). Defendant claims this line of questioning is probative as to an element of a First

Amendment retaliation claim: whether an inmate of ordinary firmness would be deterred from exercising his constitutional rights after a cell search like the one that occurred here.

For the reasons described below, the Court agrees in part with Defendant and agrees in part with Plaintiff. The Court will permit Defendant to question Plaintiff regarding the three federal cases Plaintiff has filed. However, Defendant may not question Plaintiff on his two pending state cases, which were originally filed in 2018 and 2019, years before the search at issue. Defendant may also question Plaintiff about the post-search grievances identified in ECF No. 156. The motion is thus GRANTED in part and DENIED in part.

## I.     BACKGROUND

The Court assumes the parties' familiarity with the facts of this case as described in the Court's order on Defendant's motion for summary judgment. ECF No. 94. Accordingly, the Court limits its discussion to the procedural background necessary to explain this ruling.

By way of introduction, "[t]o establish a First Amendment retaliation claim, a plaintiff must show '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). In this action, Plaintiff claims that Defendant searched his cell on September 25, 2020, in retaliation for Plaintiff's complaints about DOC staff members' failure to comply with DOC's COVID-19 protocols. Plaintiff alleges Defendant destroyed some of his personal property during the cell search.

In accordance with the Court's trial scheduling order, on January 17, 2024, the parties filed their joint trial memorandum. ECF No. 133. In it, Defendant listed no exhibits containing grievances or lawsuits filed by Plaintiff that Defendant intended to introduce at trial, while Plaintiff

listed more than 90 such grievance exhibits. At the same time that the parties filed their joint trial memorandum, Plaintiff filed a motion *in limine* to preclude Defendant from introducing evidence or cross-examining Plaintiff on any grievances or lawsuits except the COVID Grievances, the Search Grievances, and the *Cooke* matter.[1] ECF No. 135 at 1. Plaintiff argued that such evidence or testimony is irrelevant to Plaintiff's retaliation claim and, in the alternative, that the evidence should be precluded under Federal Rule of Evidence 403 as substantially more prejudicial than probative, as the jury might conclude Plaintiff was overly litigious. *Id.* Defendant opposed the motion.

The Court held a pretrial conference with the parties on February 20, 2024, during which the Court addressed Plaintiff's motion *in limine*. As the Court explained on the record and as memorialized on the docket, the Court denied Plaintiff's motion to the extent it sought to preclude Defendant from discussing any subject matter in the *Cooke* lawsuit that was unrelated to COVID-19 compliance, and granted Plaintiff's motion to the extent it sought to preclude Defendant from discussing grievances unrelated to COVID-19 filed by Plaintiff in the five years prior to the September 25, 2020, search. ECF No. 153. Additionally, because Defendant had not disclosed the post-search grievances and lawsuits he intended to rely on during cross-examination of Plaintiff, the Court directed Defendant to docket a list of the relevant material. *Id.* Accordingly, the Court held in abeyance the remaining issues in Plaintiff's motion *in limine*, ECF No. 135, so that the Court could evaluate Plaintiff's motion in light of the evidence Defendant planned to use.

---

[1] In *Cooke*, Plaintiff alleged that various defendants at Corrigan Correctional Institution were deliberately indifferent to his serious medical needs, his need for exercise, his need for nutritionally adequate meals, and his need to be safe from exposure to COVID-19 between September 22, 2017, and August 4, 2020. *See* 20-cv-1284, Initial Review Order, ECF No. 31 at 2. He also asserted claims that the defendants treated him differently than similarly-situated inmates at Corrigan regarding the provision of double mattresses and placement in a single cell and differently than similarly-situated inmates at other institutions regarding the opportunity to engage in weekly outdoor recreation. *Id.*

On February 23, 2024, Defendant docketed a notice describing the post-search lawsuits and grievances Defendant intended to possibly elicit during testimony. ECF No. 156. Defendant listed eight grievances and four lawsuits. *Id.* The eight grievances were filed six to thirteen months after the search of Plaintiff's cell, between March and November of 2021. *Id.* According to Defendant's descriptions of the grievances, they complain of issues such as recreation at Cheshire Correctional Institution, access to a library and notary services, COVID-19 prevention measures at Osborn Correctional Institution, food and water quality at Osborn, and typewriter access. *Id.*

With respect to the four lawsuits listed in Defendant's notice, two of the four lawsuits are pending in federal court. The first federal suit listed is *Wright v. Cook,* D. Conn. No. 3:21-cv-1732 (SRU) ("*Cook*"), which Plaintiff filed on December 29, 2021. *Cook* concerned alleged COVID-19 protocol compliance issues Plaintiff had witnessed at Corrigan between March and June of 2020 and at Osborn between September and October of 2021. *Id.*, Initial Review Order, ECF No. 16 at 1. As part of its initial review order allowing Plaintiff to proceed to service on certain claims alleged in *Cook*, the Court (Underhill, D.J.) severed Plaintiff's claims related to conditions of confinement at Osborn, while allowing him to proceed on claims related to conditions of confinement at Corrigan. Plaintiff later refiled the Osborn-related claims in *Wright v. Quiros*, D. Conn. No. 3:23-cv-949 (SRU) ("*Quiros*"), the second of the federal suits about which Defendant seeks to question Plaintiff. The *Quiros* suit was filed on July 18, 2023.

The other two lawsuits listed by Defendant are currently pending in state court. One is *Wright v. Semple et al.*, HHD-CV18-5060194-S (Conn. Super. Ct.). This suit was initiated on July 11, 2018, and relates to Plaintiff's claim for exposure to radon and subsequent inadequate treatment at Garner Correctional Institution. The second state suit is *Wright v. Castro et al.*, HHD-CV19-5068024-S (Conn. Super. Ct.). The suit was initiated on January 22, 2019, and brings a

4

deliberate indifference claim related to alleged inadequate dental care from which Plaintiff suffered between 2016 and 2018.

On February 26, 2024, the parties filed a joint notice explaining all remaining evidentiary issues. ECF No. 157. In this notice, Plaintiff reiterated his position that Plaintiff's post-search grievances and lawsuits were irrelevant to his retaliation claim because the inmate of ordinary firmness standard analysis is objective and should not consider Plaintiff's subjective responses. *Id.* at 7–8. In the alternative, Plaintiff argues the evidence should be precluded under Federal Rule of Evidence 403. *Id.* In this notice, Defendant also maintains his position that the grievances and lawsuits are relevant to the jury's evaluation of whether an inmate of ordinary firmness would be deterred by the cell search and alleged property destruction. *Id.* at 9.

## II.   LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019). The moving party bears the burden of establishing the inadmissibility of evidence. *See United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

Evidence must be relevant in order to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The standard is "very low." *United States v. White*, 692 F.3d

5

235, 246 (2d Cir. 2012) (quoting *United v. Al-Moavad*, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; *see White,* 692 F.3d at 246.

### III.  DISCUSSION

The Court has already granted Plaintiff's motion *in limine* to preclude any evidence related to non-COVID grievances filed before September 25, 2020 (including the five years of grievance history that Defendant described at the pre-trial conference held on February 20, 2024). ECF No. 153. Further, as the Court has already explained, the Court has denied Plaintiff's motion to the extent he seeks to limit Defendant's introduction of the full subject matter of the *Cooke* lawsuit.

The question that remains is whether Defendant should be allowed to introduce evidence and question Plaintiff as to the additional lawsuits and grievances identified by Defendant. *See* ECF No. 156. For the reasons that follow, the Court grants in part and denies in part the remainder of Plaintiff's motion *in limine*.

#### A.  Relevance

As an initial matter, the Court finds that Plaintiff's post-search grievances and pending state and federal lawsuits are relevant.

As noted above, the relevance hurdle is "very low." *White*, 692 F.3d at 246. Indeed, "[e]vidence need not be conclusive in order to be relevant;" "[a]n incremental effect is sufficient." *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014). As also noted above, the second element of a retaliation claim is whether the defendant took adverse action against the plaintiff. *See Gill*, 389 F.3d at 381. In the prison context, the Second Circuit has defined "'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of

ordinary firmness from exercising constitution rights.'" *Id.* (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (ellipses removed) (emphasis in original)).

The Court holds that Plaintiff's continued filing of grievances and new lawsuits after the September 25, 2020, search of his cell is relevant to the element of adverse action—specifically, as to whether an inmate of ordinary firmness would be deterred from exercising their constitutional rights by the defendant's alleged conduct. *See Gill*, 389 F.3d at 381.

To begin, although the test is objective, Second Circuit precedent does not foreclose the relevance of an inmate's post-alleged adverse action activity to the objective ordinary inmate analysis. In *Brandon v. Kinter*, the Second Circuit explained, in a summary judgment posture, that an inmate's continuing to file grievances even after the alleged retaliation does not necessarily defeat his claim, because the test is objective, and the plaintiff is not required to show that *he* was actually deterred. 938 F.3d at 40; *accord Gill*, 389 F.3d at 381; *Davis*, 320 F.3d at 353. Rather, the plaintiff must only demonstrate that a reasonable inmate would be deterred, even if the plaintiff himself continued to file grievances. *Brandon*, 938 F.3d at 40. As the court explained, "a prisoner 'should not be denied remedy because his extraordinary efforts resulted in the resolution of grievances that would have deterred a similar situated individual of ordinary firmness.'" *Id.* (quoting *Gill*, 389, F3d. at 381). To deny extraordinarily firm inmates a claim would be to deny the vindication of constitutional rights for inmates who continue to exercise their rights despite serious efforts to stop them.

That a court should not bar a plaintiff from seeking relief because of his greater-than-ordinary fortitude is clear. What is less clear, however, is to what extent a jury should consider evidence of a plaintiff's particular firmness in assessing the ordinary firmness standard, from an objective standpoint. This appears to be a question of first impression in the Second Circuit, as

7

decisions relating to this issue have generally arisen in the context of either motions to dismiss or motions for summary judgment, rather than trial. *See Brandon*, 938 F.3d at 40 (summary judgment); *Gill*, 389 F.3d at 384 (motion to dismiss); *Davis*, 320 F.3d at 353 (motion to dismiss).

The Court is convinced that evidence of the plaintiff's First Amendment-protected activity postdating the alleged retaliation is relevant to the objective inquiry of whether a similarly-situated inmate of ordinary firmness would have been deterred by the defendant's alleged acts. For instance, the fact that Plaintiff continued to file grievances and actively litigate his lawsuits may tend to make more probable the fact that an inmate of ordinary firmness could withstand a cell search of the type Defendant allegedly conducted and not be deterred from engaging in protected activity (and thus, that there was no adverse action). On the other hand, a jury may infer from Plaintiff's continued exercise of his First Amendment rights and from his testimony that Plaintiff is an extraordinarily firm inmate who, despite serious and consequential alleged reprisal, continued to exercise his rights, when an inmate of ordinary firmness would have been deterred from doing so. In either scenario, Plaintiff's post-search grievances and lawsuits are baseline relevant because they tend to make more or less probable the fact that an inmate of ordinary firmness would be deterred by the cell search and alleged destruction of property.

Other courts in this District have come to similar conclusions as to the probative value of such evidence in evaluating the person of ordinary firmness standard. For example, in *Lynch v. Ackley*, Judge Shea ruled on summary judgment that the plaintiff's testimony that he became more fearful to speak after the alleged adverse action was evidence that the defendants' actions would deter a similarly-situated person. 2014 WL 4782812, No. 3:12-CV-537 (MPS), at *12 (D. Conn. Sept. 24, 2014) *reversed on qualified immunity grounds*, 811 F.3d 569 (2d Cir. 2016) ("[Plaintiff] also testified at his deposition that 'I'm much more fearful in what I say and how I say it.' Such

8

evidence would support a finding that Defendants' actions 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'") (citations omitted) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)).  Similarly, in *Jennings v. Town of Stratford*, after a trial by jury, Judge Meyer recognized that a person of ordinary firmness would have been dissuaded from exercising his rights based on evidence that the police officer plaintiff was in fact deterred from filing a grievance related to a written warning he had received.  263 F. Supp. 3d 391, 400, 403 (D. Conn. 2017).  Finally, in *Snyder v. Whittier*, the Second Circuit considered that the plaintiff had himself complained about an injury to an officer as probative on the question of whether a prisoner of ordinary firmness would be deterred from exercising his First Amendment rights under similar circumstances.  *Snyder v. Whittier*, 428 F. App'x 89, 92 (2d Cir. 2011) (summary order) ("Snyder cannot contend that a similarly situated individual of ordinary firmness would be willing to complain above Whittier's head, but unwilling to file a formal grievance for fear of Whittier, where Snyder's first complaint was made to Funnye, Whittier's fellow corrections officer.").

Further, other circuits that use the same objective "ordinary firmness" standard have found that continued exercise of a person's constitutional rights is probative of the ordinary firmness standard in the First Amendment retaliation context.  For instance, the Eighth Circuit has held that a "[plaintiff's] actions in response to [a defendant's] alleged retaliation [i]s evidence of what a person of ordinary firmness would have done."  *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) ("[T]he record reflects . . . [plaintiff] continued to speak out . . . on numerous occasions.")).  Similarly, the Fourth Circuit has held that a "plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activities, [even if] it is not

9

dispositive." *Constantine v. Records and Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005); *accord Blankenship v. Manchin*, 471 F.3d 523, 532–33 (4th Cir. 2006); *Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005) ("We note that '[t]he question is not whether the plaintiff herself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done.'") (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)) (citing *Constantine*, 411 F.3d at 500) (alterations in original). Finally, the Sixth Circuit has found an inmate's undeterred First Amendment activities to be relevant evidence that an inmate of ordinary firmness would not be deterred by the alleged retaliation. *Smith v. Yarrow*, 78 Fed. App'x 529, 541 n.8 (6th Cir. 2003) ("The inquiry is more objective than subjective. However, it does seem that the fact that Plaintiff proceeded with the lawsuit offers some probative evidence that the conduct was not a sufficient deterrent under the objective standard."). The rationale of these cases is persuasive: how the plaintiff himself reacted to the alleged retaliation has at least some bearing on whether an ordinary inmate would have been deterred from exercising his constitutional rights under similar circumstances.

For these reasons, the Court finds that Plaintiff's post-search grievances and lawsuit activities are relevant to the adverse action element of Plaintiff's retaliation claim.

B. Federal Rule of Evidence 403

While the Court has found that all of Plaintiff's post-search grievances identified by Defendant are relevant, it must still analyze whether their probative value is substantially outweighed by the risk of unfair prejudice under Rule 403. The Court precludes testimony related to Plaintiff's two state court cases under Rule 403, though Defendant may properly elicit testimony regarding Plaintiff's other post-search grievances and two federal lawsuits.

*1. Legal Standard*

Even if evidence is relevant, it is still subject to the balancing test of Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." "The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)) (alterations in original). The adverse effect at issue here is whether admission of Plaintiff's other grievances and lawsuits would unfairly and prejudicially cast him as an overly-litigious person. *See Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988) ("The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent.").

*2. Post-Search Grievances and Federal Suits*

The Court will allow Defendant to elicit testimony of the fact of filing, date of filing, and general subject matter of *Cook*, and the fact of filing, the date of filing, and general subject matter of its companion case *Quiros*, as well as the fact of submission, date of submission, and general subject matter of the eight post-search grievances identified in ECF No. 156.[2]

*Cook* was initiated on December 29, 2021, a little more than a year after the September 25, 2020, cell search. No. 3:21-cv-1732 (SRU), ECF No. 1. This suit concerned alleged COVID-19 protocol compliance issues Plaintiff had witnessed at Corrigan Correctional Center and Osborn Correctional Institution. *Id.*, Initial Review Order, ECF No. 16 at 1. As part of its initial review

---

[2] Additionally, the parties agree that evidence related to *Cooke* is relevant, and Defendant is permitted to examine Plaintiff about the scope of his allegations in *Cooke*, even beyond allegations related to COVID-19 compliance. *See* ECF No. 153.

11

order allowing Plaintiff to proceed to service on the claims alleged in *Cook*, the Court severed the Osborn claims, giving rise to Plaintiff's refiling of those claims in the *Quiros* action in 2023. For present purposes, however, both *Cook* and *Quiros* were essentially initiated at the same time and both concern similar claims for COVID-19 protocol noncompliance at the correctional institutions where Plaintiff was housed.

The probative value of these two lawsuits is not substantially outweighed by the danger of unfair prejudice, and the Court will allow Defendant to cross-examine Plaintiff about these two lawsuits. The allegations in both cases were included in the *Cook* complaint, which was filed just over a year after Plaintiff's cell was searched by Defendant and less than a year after Plaintiff initiated the instant suit. ECF No. 1. That Plaintiff presented the allegations in *Cook* and *Quiros* to a court within approximately a year of the search at issue makes the filing of the cases probative of whether a reasonable prisoner would have been deterred by Defendant's alleged actions. Plaintiff may testify that he was deterred from filing lawsuits for about a year but then persevered, and Defendant may argue that he was not in fact deterred, because he eventually did file the suits. What Plaintiff chose to do is relevant to—though not dispositive of—what a similarly-situated ordinary prisoner would do after a cell search of the type allegedly conducted here, for the reasons explained above. Bolstering this position is the fact that both of the other federal lawsuits concern similar COVID-19 protocol noncompliance that Plaintiff argues motivated Defendant's retaliatory animus. While introducing evidence from these suits bears some risk of painting Plaintiff as overly-litigious, this prejudice does not substantially outweigh the relatively high probative value of these cases.

For the same reasons, Defendant may cross-examine Plaintiff on the eight grievances identified in ECF No. 156. First, the grievances were filed between six and thirteen months after

Plaintiff's cell search, and all within a year of the initiation of this suit. ECF No. 156 at 1. That the grievances were filed in close temporal proximity to the cell search and the initiation of this suit is relevant evidence that gives content to the ordinary firmness standard. On the other side of the balance, with the exception of one, the grievances are not directly related to Plaintiff's COVID-19 compliance claims and do carry the risk of making Plaintiff look litigious. However, the risk of the prejudice does not substantially outweigh the relative probative value of the grievances, in the Court's view. Accordingly, Defendant may cross-examine Plaintiff on these grievances.

### 3. Pre-Search State Suits

The Court will not, however, allow Defendant to elicit any testimony regarding Plaintiff's state court lawsuits filed long before the search of Plaintiff's cell.

First, the Court will not allow Defendant to elicit testimony related to *Wright v. Castro et. al.*, HHD-CV19-5068024-S (Conn. Super. Ct.). This suit has little probative value as to the ordinary firmness standard because the suit was imitated on January 22, 2019, based on Plaintiff's alleged dental issues. Further, introducing evidence of another lawsuit initiated by Plaintiff carries a risk of substantially prejudicing Plaintiff by painting him as litigious. *See Outley*, 837 F.3d at 592. Accordingly, under Federal Rule of Evidence 403, this evidence is precluded.

Second, the Court will not allow Defendant to elicit testimony related to *Wright v. Semple et al.*, HHD-CV18-5060194-S (Conn. Super. Ct.). This suit was initiated by Plaintiff on July 11, 2018, more than two years before the search, and relates to Plaintiff's claim for exposure to radon and subsequent inadequate treatment at Garner Correctional Institution. For the same reasons that the Court precluded *Wright v. Castro* under the Rule 403 balancing test, the Court precludes any testimony related to *Wright v. Semple*. Although Plaintiff may have filed documents in those cases

13

after the search in question, these older cases' probative value is substantially outweighed by the risk of the prejudicial effect of casting Plaintiff as overly litigious.

Accordingly, Plaintiff's motion *in limine* is granted in part, as to the introduction of testimony related to the two state suits identified by Defendant in ECF No. 156.

### IV. CONCLUSION

For the reasons described herein, Plaintiff's motion *in limine* is GRANTED in part and DENIED in part. Defendant may elicit testimony regarding Plaintiff's COVID Grievances, Search Grievances, and post-search grievances and regarding his three federal actions as described herein (*Cooke, Cook,* and *Quiros*) and identified in ECF No. 157. However, Defendant may not elicit testimony regarding Plaintiff's pre-search state lawsuits.

**SO ORDERED** at Hartford, Connecticut, this 27th day of February, 2024.

                             */s/ Sarala V. Nagala*
                             SARALA V. NAGALA
                             UNITED STATES DISTRICT JUDGE